Jules D. Zalon
20 Curtis Avenue
West Orange, New Jersey 07052
Tel: (973) 324-2444
Fax: (973) 547-9154
Email: jzalon@zalonoffice.com

**Attorney for defendant Uncle
Dave's Brass Model Trains**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MORNING SUN BOOKS, INC.                          Civil Action No.
                                                 11-0608 (CCC)

                         Plaintiff,

             v.

DIVISION POINT MODELS, INC., et al,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## Memorandum of Law of Defendant
## Uncle Dave's Brass Model Trains in
## Support of its Motion for Summary Judgment

Table of Authorities

**Cases:**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986) . . . . . . . . . . . . . . 1

Batesville Services, Inc. v. Funeral Depot, Inc., 2004 WL 2750253, 2
(S.D.Ind. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) . . . . . . . . . . . . . . . . . . . . . . . 1

Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165
F.3d 221(3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Eldred v. Ashcroft, 537 U.S. 186, 223, 123 S. Ct. 769,
154 L. Ed. 2d 683 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348,
111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649, 650 (3d Cir. 1954) . 15

Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F.Supp. 1366,
1369 (S.D.N.Y.), aff'd, 415 F.2d 1007 (2d Cir.1969) . . . . . . . . . . . . . . . . . . . . . . 1

Quinto v. Legal Times of Wash., Inc., 506 F. Supp. 554 (D.D.C., 1981) . . . . . . . 1

Serbin v. Ziebart Int'l Corp., 11 F.3d 1163, 1175 (3d Cir. 1993) . . . . . . . . . . . . . 21

**Constitution**:

U.S. Const., Art. I, § 8, cl. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes:**

15 U.S.C. 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

17 U.S.C. §101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17 U.S.C. § 102(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

17 U.S.C. §103(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17 U.S.C. §301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

17 U.S.C. §411(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

**Rules:**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Regulations:**

Copyright Office Circular #1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Copyright Compendium II, §619 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Other Authorities:**

McCarthy on Trademarks and Unfair Competition, 4th Ed. §27:74 . . . . . . . . 16, 17

Gilson on Trademarks § 5.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Nimmer on Copyright §§ 2.01[A], [B] (1990) . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Introductory Statement</u>

This brief is submitted by defendant Uncle Dave's Brass Model Trains in support of our motion for summary judgment on both the copyright and trademark claims of plaintiff Morning Sun Books, Inc. There are no material facts in dispute with regard to either of these issues. Under the circumstances, summary judgment is appropriate.

<u>Legal Standard For Summary Judgment</u>

Summary judgment is proper if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the moving party submits sufficient evidence to sustain the motion, the non-moving party must produce specific facts showing that there is a genuine issue for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The motion must be granted unless there is sufficient evidence for a jury to return a verdict for the non-moving party.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-52 (1986). Although the Court must resolve inferences in the light most favorable to the non-moving party, such inferences must be reasonable.  The test is not whether a material fact is in dispute, but whether the dispute is genuine.  <u>Anderson</u>, 477 U.S. at 248.

Summary judgment is an appropriate remedy in copyright infringement suits. <u>Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.</u>, 295 F.Supp. 1366, 1369 (S.D.N.Y.), <u>aff'd</u>, 415 F.2d 1007 (2d Cir.1969); <u>Quinto v. Legal Times of Wash., Inc.</u>,

1

506 F. Supp. 554 (D.D.C., 1981). Particularly where, as here, the plaintiff has no copyright registrations covering the very photographs they claim the defendants infringed, summary judgment will clear the docket of a perfectly hopeless claim.

Summary judgment is also an appropriate remedy for plaintiff's Lanham Act claim, not only because the plaintiff has no protectible rights in the photographs; and not just because there is no competition between the parties and therefore no prudential standing; but mainly because plaintiff cannot establish any (let alone all) of the three elements necessary to prove its Lanham Act case: misrepresentation, confusion, or damage.

<u>Statement of Facts</u>

**This case solely concerns the posting of photographs on the Internet.**

Plaintiff Morning Sun Books, Inc. ("Morning Sun") is a publisher of books featuring photographs of train engines and rolling stock (i.e., passenger cars, hoppers, cabooses). [Complaint, ECF #1, ¶16; Yanosey 7/6/12 deposition, 5/2-5[1]; App. p 1[2]] The text of the books were written by numerous independent writers who separately assigned their rights to Morning Sun. [Exhibit A of Complaint: ECF #1-2] The photographs - **whose publication is the only issue in this case** - were separately acquired by Morning Sun from scores of independent photographers or their legal

---

[1]This refers to the page and line numbers of the deposition.

[2]This refers to the page in the Appendix

representatives. [e.g., Yanosey 7/6/12  deposition, 35/20-24; App. p 12] See also plaintiff's response #3 to Uncle Dave's 1st set of interrogatories:

> Indicate each step in the process by which plaintiff acquired its rights to each photograph claimed to have been infringed by Uncle Dave. . . .

> Response: Plaintiff obtained from the photographer or his estate, Assignments transferring ownership of the copyright in each photograph to plaintiff MSB. [App. p 12]

Plaintiff has produced 19 copyright registrations [ECF # 1-2], which cover only the text of the books that contain the 150-plus photographs they initially claimed the defendants have infringed,[3] but not the photographs themselves. The copyright applications filed by Morning Sun (which become the actual registration certificates once they are approved by the United States Copyright Office) utilized form TX, the form required to be filed to register books or other textual material. [Id.] That form requires that the applicant list the **author**'s name, the "Nature of **Authorship**," and other relevant information, including - in the event that the claimant is someone other than the author, how the claimant obtained its ownership rights. Morning Sun is the claimant on each of the relevant copyright registrations. [Id]

The "Nature of Authorship" space on all but one of the copyright applications lists only the phrase "Entire text." [Id] The one exception, "Southern

---

[3]However, they have produced actual assignments (from any photographer or his estate) that cover only 15 photographs, almost none of which were ever posted on Uncle Dave's website. They thereby have abandoned over 100 copyright claims.

Railway Through Passenger Service in Color" by Greg Stout lists the phrase, "Text and

Compilation of Photographs." [Id]

Defining The Playing Field

Before addressing the legal issues, we point out that the essence of

plaintiff's complaint against Uncle Dave is that its website

<www.uncledavesbrass.com> was "connected to" the website of co-defendant Division

Point, which concededly did post all those photographs on its own website. Here is

how plaintiff put it in responding to an early interrogatory:

> Plaintiff MS viewed the website of Uncle Dave's Brass
> Model Trains, and determined that it was connected to the
> website of Division Point, which had over 100 infringing
> copies of plaintiff's photographs. [Plaintiff's response #1 to
> Uncle Dave's first set of interrogatories; App. p 23]

And to add emphasis to that claim, plaintiff's counsel Mr. Sutton reiterated it at Mr.

Yanosey's July 6, 2012 deposition:

> MR. SUTTON: There was a link between the two websites,
> Uncle Dave -- let me just get this on the record. There was
> a link between Uncle Dave's website and the Division Point
> website.
>
> * * *
>
> So that if a person went to the Uncle Dave's website, they
> could, but through a link, go to the Division Point website
> which had over a hundred and thirty photographs on there.
> Just so there's no misunderstanding, part of our claim is that
> as a result of that link between the two websites, the viewer's
> on Uncle Dave's website were able to see all the Division
> Point photos. So whatever Division Point was infringing, so
> was Uncle Dave's. [Yanosey 7/6/12 deposition, 19/1-15;
> App. p 9]

4

The problem with this claim is that it simply is not so. What plaintiff's president Mr. Yanosey saw when he visited Uncle Dave's website was Uncle Dave's website, period. It was not "linked" or otherwise "connected to" the Division Point website and hasn't been for 10 years, if ever. [Gurdak decl, ¶22] And their own evidence proves it: screen shots that Yanosey claims showed the linking are actually screen shots of Uncle Dave web pages. Here, in Yanosey's own words, is proof that he was totally mistaken:

> Q:     I see. So by clicking on that link that is shown on [Bates numbered] page 445, you get directly to the Division Point website?
>
> A:     Right. And this is your link. This is what you asked me before. [Yanosey 7/6/12 deposition, 61/12-16; App. p 13]
>
> * * *
>
> Q:     So at this point, you have no other evidence to show that Uncle Dave obtained pages from the Division Point website or link to the Division Point website? That's it?
>
> A:     Correct. [Yanosey 7/6/12 deposition, 62/3-7; App. p 14]

But the screen shots shown on Bates numbered pages 445 et seq are pages from the website of Uncle Dave, not Division Point. That is proven by the address bar at the top of each of those web pages [as shown at App. pp 30-43]:

| Name on Address Bar | Bates Page # | Appendix Page # |
|---|---|---|
| DIVISION POINT brass model trains at UNCLE DAVE'S | 445, 446 | 30, 31 |
| UNCLE DAVE'S brass model trains - HO SCALE | 447, 448 | 32,33 |
| UNCLE DAVE'S brass model trains - HOME | 449-452 | 34-37 |
| UNCLE DAVE'S brass model trains - BRASS LIST | 453-456 | 38-41 |
| UNCLE DAVE'S brass model trains, NEW MODEL ANNOUNCEMENTS | 457, 458 | 42,43 |

In fact, the Court can see for itself by visiting Uncle Dave's website right now, at <http://www.uncledavesbrass.com>. As explained in the Gurdak declaration [¶¶5-9], the website is a fairly standard – and obvious - site for a seller advertising its products primarily on the Internet: It contains a home page; a drop-down menu listing its manufacturing sources (known in the trade as "Importers"); and separate pages (screens) listing the train models from each Importer.

By running the cursor over the **Importers** button, a drop-down menu appears which lists all of Uncle Dave's importers; clicking on **Division Point**, the viewer finds the Division Point entry screen, which is essentially identical to the page reproduced on Bates # pages 445 and 446). [App. pp 30, 31] And by clicking on the **Future** link, the viewer finds Uncle Dave's stock listing of models it expects to obtain from Division Point, which is reproduced on Bates ## pages 429 - 433. [App. pp 25-29]

Those Bates numbered pages were produced by plaintiff as evidence that Uncle Dave's website was connected to the Division Point website. See extract from

Yanosey's 7/6/12 deposition quoted above on page 5.  As can be seen, however, **the viewer has never left Uncle Dave's website**.

Not that this should come as any surprise to plaintiff, since we explained it to Mr. Sutton on several occasions, including at Mr. Yanosey's deposition on July 6, 2012, and again in exquisite detail in an email this writer sent to Mr. Sutton on August 20, 2012, once again explaining that Yanosey was looking not at any link to Division Point's website, but at Uncle Dave's website at all times, and urging him to therefore drop us from the lawsuit. A copy of that email is found on pp 44/45  of the Appendix. This subject is treated in detail in Mr. Gurdak's accompanying declaration.

<u>Summary of Argument</u>

Plaintiff filed this copyright infringement action claiming that the defendants (including Uncle Dave) infringed – by posting on their websites – more than 150 separate photographs of (mostly) very old train engines and rolling stock. Yet, subject to the single exception not here relevant, the only copyright registrations they possess cover only the text of the books in which the photographs appear.[4] As a copyright registration for the infringed work is a prerequisite for an infringement action, and as Morning Sun's sole claim is for infringement of "their" photographs, their copyright claim is hopelessly infirm and must be dismissed.

---

[4]We point out that one registration, for the book titled "Southern Railway Through Passenger Service in Color," authored by Greg Stout, identifies the nature of authorship as "text & compilation of photos." However, since the defendants are accused of infringing only a single photograph in that book, by definition no "compilation" claim is implicated in this action.

Plaintiff also alleges that the defendants' use of "their" photographs of actual train engines - to identify the model trains the defendants are selling - constitutes a violation of §43(a) of the Lanham Act, apparently because purchasers will be confused into believing that the model trains emanated from or were otherwise authorized or approved by the plaintiff. Ignoring the illogic of that claim (people will believe that the publisher of train photographs was associated with the sale of model trains?), the claim is fatally defective, because plaintiff cannot establish any of the elements of a 43(a) claim: a false representation, likelihood of confusion, or damage. Nor does plaintiff have prudential standing. Morning Sun and the defendants are not in any competitive relationship . . . and §43(a) recognizes only a competitive tort.

<u>Argument</u>

<u>The Copyright Claim is Fatally Defective</u>

The copyright infringement claim must be dismissed as a matter of law, since plaintiff has failed to satisfy the most elemental requirement for filing an infringement action: valid registrations for the works being infringed: **photographs**.

Section 411 of the Copyright Act makes this abundantly clear:

(a) Except for an action brought for a violation of the rights of the author under section 106A(a) [17 USCS § 106A(a)], and subject to the provisions of subsection (b), **no civil action for infringement of the copyright in any United States work shall be instituted until** preregistration or **registration of the copyright claim has been made in accordance with this title.** [17 U.S.C. §411(a)] [Emphasis added]

While plaintiff has alleged ownership of 19 separate copyright registrations, those registrations cover only the text of 19 picture books. A quick look at those very registrations shows that the "nature of authorship" section of each registration certificate identifies nothing but "entire text."[5]

The "Nature of Authorship" in the copyright application form defines the scope of the registration.

> Nature-of-authorship statement. In general, the nature of authorship defines the scope of the registration; therefore, it represents an important copyright fact. [Copyright Compendium II, §619][6]

Necessarily, then, even if the books' authors had created the photographs, the applications limited the copyright protection solely to the text. Of course, in this case, we need not concern ourselves with the scope of the registration, since those authors did not take the photos, and therefore the photos are simply not protected by the registrations.

---

[5]But see footnote 4.

[6]"The Compendium is the general guide on registration, recordation, and related practices consulted by Copyright Office staff and the public. See [Priorities and Special Projects] of the United States Copyright Office." [Statement found on the Copyright Office web site at, http://www.copyright.gov/compendium/. The site also contains the following notice: "The Compendium of Copyright Office Practices is currently undergoing a major revision as of October 2011." (sic) The latest version of the Compendium (no longer found on the Copyright Office website) can be found at http://www.copyrightcompendium.com/. It was copied by an individual who claims to have copied it from one maintained by the Franklin Pierce Law Center.

> The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the sine qua non of copyright; accordingly, **copyright protection may extend only to those components of a work that are original to the author**.

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) [Emphasis added] And since the author of each copyrighted work is the person identified in the copyright registration certificate, copyright protection only extends to the text, as the photographs are simply not "components of the works" that are original to such authors. This jumps right off the page of the Copyright Act:

> Copyright is a form of protection provided by the laws of the United States (title 17, U. S. Code) to **authors of "original works of authorship"** . . . . [Copyright Office Circular #1, found at <http://www.copyright.gov/circs/>] [Emphasis added]

Constitutionally, such protection is "limited to 'original intellectual conceptions of the **author** . . . .'" Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 346-7 (U.S. 1991):

> The sine qua non of copyright is originality. **To qualify for copyright protection, a work must be original to the author** . . . . Id at 345, citing Nimmer on Copyright §§2.01[A], [B] (1990) [Emphasis added]

A quick look at the complaint shows that the first cause of action (copyright infringement) must therefore be dismissed. It claims (at least originally) that the defendants infringed more than 150 photographs, but not one of those photographs is the subject of a valid copyright registration. Morning Sun is here attempting to

protect all these unregistered photographic works, hoping that no one will notice that the copyright registrations protect only the text of each book.

The purpose of copyright law is "[t]o promote the progress of science and useful arts, by securing for limited times to **authors** and inventors the exclusive right to their respective writings and discoveries." U.S. Const., Art. I, § 8, cl. 8; see also Eldred v. Ashcroft, 537 U.S. 186, 223, 123 S. Ct. 769, 154 L. Ed. 2d 683 (2003) (Stevens, J., dissenting). The touchstone of copyright law is that copyright protection is afforded only to "original works of **authorship**." 17 U.S.C. § 102(a). [Emphasis added]

Since the subject matter of this lawsuit is photographs, and since the "authors" of the works protected by copyright registrations only authored the text, plaintiff has filed an essentially frivolous lawsuit, as there is no copyright protection for even a single photograph. For purposes of this discussion, the only relevant authors are the authors of the **photographs**: those four dozen individuals who Morning Sun claims took the photographs they are here suing upon.

The most that can be said about the photographs in these books are that they are parts of compilations, that is, collections of independently-created, pre-existing works, which have been assembled for inclusion in the MS's books. The Copyright Act defines a compilation as follows:

> A "compilation" is a work formed by the collection and
> assembling of preexisting materials or of data that are

> selected, coordinated, or arranged in such a way that the
> resulting work as a whole constitutes an original work of
> authorship.   The term "compilation" includes collective
> works. [17 U.S.C. §101]

The photographs are clearly pre-existing materials that were selected or arranged for inclusion in the books. Whether such arrangement suffices to constitute an "original work of authorship" is, in our case, irrelevant, since Uncle Dave never copied any selection or arrangement. Nor has plaintiff made that claim. On the contrary, of all the 137 (or 150) photographs that Morning Sun originally claimed were infringed by Uncle Dave, it turns out that Uncle Dave posted just 10. [Gurdak dec. ¶¶16, 17] But even today, Morning Sun has been unable to produce evidence of ownership for 9 of them. [See Zalon dec., ¶¶11, 12; Gurdak dec., ¶18]

Of those 10, the only photograph plaintiff has even shown an assignment for is the photograph of Quebec Central engine # 1072, credited to Robert F. Collins, which appeared in the book entitled "Canadian Pacific Steam In Color, Volume 1: Montreal and East," written by Kevin Holland. [Id] So even if MS's copyright registration for that book included the compilation of photographs (it didn't; the application only claimed rights in the "entire text"), that particular copyright would not protect an individual photograph contained in that book, because any compilation rights would extend only to the arrangement of the photographs (as pre-existing material), and would in no way affect or enlarge rights in the individual photographs themselves:

> The copyright in a compilation . . . extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material. [17 U.S.C. §103(b)]

And since those photographs were never separately copyrighted, they cannot be the subject of a copyright infringement action, because, as noted above:

> . . . no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. [17 U.S.C. §411(a)]

<u>The Lanham Act Claim Cannot Stand</u>

Plaintiff's second cause of action, false designation of origin under §43(a) of the Lanham Act, 17 U.S.C. 1125(a), is hopelessly infirm. Here is their allegation:

> 48. Defendants' use of Morning Sun's copyrighted photographs to advertise . . . Division Point products . . . constitutes . . . false or misleading representations of fact in violation of 15 U.S.C. § 1125(a) of the Lanham Act . . . . [Complaint, ECF #1]

At the outset, we remind the Court that Uncle Dave posted only 10 images that were ever published in any MS book. And only a single image even used the name "Morning Sun Books," that being the photograph of Quebec Central engine # 1072, credited to Robert F. Collins, which appeared in the book entitled "Canadian Pacific

13

Steam In Color, Volume 1: Montreal and East," written by Kevin Holland. Here is the precise credit line that accompanied that image:

Photo: Robert F. Collins
Morning Sun Books Collection

[See Exhibit G to Gurdak Dec., ¶16] Eight of the other images carried just a photo credit (e.g., "Photo: David R. Sweetland Collection") [Id]; and one image erroneously credited a non-existent **Morningside** Books:

Photo: George Diamond, from Canadian Pacific
Steam in Color Vol 1: Montreal & East by
Kevin J. Holland (2006 **Morningside** Books) [Id]

But even assuming ***arguendo*** that Uncle Dave did in fact publish any (or for that matter, all) of Morning Sun's photographs, there would be no violation of §43(a). That statute provides:

> Any person who . . . uses in commerce any . . . false designation of origin, false or misleading . . . representation of fact, which (1) is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person or . . . (2) misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a). Even at this late stage of the litigation, plaintiff has failed to articulate just what constitutes the violation of this statute, since all we are dealing with are a handful of photographs (10 to be precise) that in all but one instance simply

14

identify the photographer (or a non-existent Morningside Books). The closest we have gotten to an explanation was Mr. Sutton's pointing out "all those cases involving infringing photographs" [See Zalon dec.¶2]. The argument apparently is that Uncle Dave's mere posting of those prototype images – without more – constitutes the violation. The Third Circuit case L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649, 650 (3d Cir. 1954) (one of the most famous of those "cases involving infringing photographs") defines that sort of claim as one for false advertising:

> . . . defendant published . . . a display advertisement . . . to promote the mail order sale of its dress at a stated price of $6.95, but showing as the most prominent feature . . . an actual photographic reproduction of plaintiff's dress, thus fraudulently represented as the article defendant was selling for $6.95.
>
> * * *
>
> In relation to . . . § 43(a) this complaint states about as plain a use of a false representation in the description of goods sold in commerce as could be imagined. [214 F.2d at 650]
>
> * * *
>
> Perhaps this statutory tort bears closest resemblance to the already noted tort of false advertising to the detriment of a competitor . . . .[Id at 651]

The statutory elements of a 43(a) claim are (a) the use by the defendant of a "false designation of origin," or a "false or misleading . . . representation fact, which (b) is "likely to cause confusion"; and which results in (c) "damage." [15 U.S.C. 1125(a)]

But plaintiff strikes out on all three requirements: (a) there are no false representations associated with the posting of those 10 images (except perhaps for crediting one photo to "Morningside Books" (clearly not damaging to the plaintiff); (b)

there therefore cannot be any confusion; and (c) plaintiff cannot show damage. And while counsel would have us believe that there is something special about the use of a photograph in making out a 43(a) claim, that is not substantively different from the more ordinary use a plaintiff's trademark on a brummagem. In a successful 43(a) case, they both involve the use of a false representation to accomplish the fraud.

In his highly regarded tome, Professor McCarthy discusses these photograph cases as follows:

> In a surprisingly large number of cases, defendant has used a picture of plaintiff's product to advertise and solicit sales of defendant's different or inferior product. This has developed into a distinct sub-category of cases well recognized as a §43(a) violation.

McCarthy on Trademarks and Unfair Competition, 4th Ed. §27:74. The author then goes on to cite – under footnote 1 – a blizzard of cases in which the court found a violation of 43(a) because the defendant used a photograph of the plaintiff's product to sell its own, inferior product:

> **L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649, 102 U.S.P.Q. 94 (3d Cir. 1954)** (dress sales); Zandelin v. Maxwell Bentley Mfg. Co., 197 F. Supp. 608, 131 U.S.P.Q. 69 (S.D.N.Y. 1961) (telephone index sales); Ideal Toy Corp. v. Fab-Lu, Ltd., 266 F. Supp. 755 (S.D.N.Y. 1964), aff'd, 360 F.2d 1021, 149 U.S.P.Q. 800 (2d Cir. 1966) (photograph of plaintiff's doll); American Optical Corp. v. Rayex Corp., 266 F. Supp. 342, 152 U.S.P.Q. 311 (S.D.N.Y. 1966), aff'd, 394 F.2d 155, 157 U.S.P.Q. 465 (2d Cir. 1968), cert. denied, 393 U.S. 835, 21 L. Ed. 2d 106, 89 S. Ct. 109, 159 U.S.P.Q. 798 (1968) (photograph of plaintiff's sunglasses in defendant's catalog); General Pool

16

Corp. v. Hallmark Pool Corp., 259 F. Supp. 383, 151 U.S.P.Q. 372 (N.D. Ill. 1966) (picture of plaintiff's swimming pool in defendant's brochure); Crossbow, Inc. v. Dan-Dee Imports, Inc., 266 F. Supp. 335, 153 U.S.P.Q. 163 (S.D.N.Y. 1967) (use of photo of plaintiff's signal light by defendant); Truck Equipment Service Co. v. Fruehauf Corp., 536 F.2d 1210, 191 U.S.P.Q. 79 (8th Cir. 1976), cert. denied, 429 U.S. 861, 50 L. Ed. 2d 139, 97 S. Ct. 164, 191 U.S.P.Q. 588 (1976) (photo of plaintiff's truck in defendant's sales literature where defendant copied the shape of plaintiff's product); C. B. Sports v. Gaechter-Haber & Associates, Inc., 210 U.S.P.Q. 597 (D. Vt. 1981) (photo of plaintiff's product); Elnicky Enterprises, Inc. v. Spotlight Presents, Inc., 213 U.S.P.Q. 855 (S.D.N.Y. 1981) (videotape of plaintiff's robot used to sell defendant's robot); Accurate Leather & Novelty Co. v. LTD Commodities, Inc., 18 U.S.P.Q.2d 1327 (N.D. Ill. 1990) (the use in defendant's catalog of a photo of plaintiff's handbag to sell defendant's inferior handbag is a violation of § 43(a); preliminary injunction granted); Gale Group, Inc. v. Diane Corp., 20 U.S.P.Q.2d 1550 (M.D. Fla. 1991) (injunction against defendant using in an advertising brochure a photo of plaintiff's competing product); H.O. Sports Inc. v. Earth & Ocean Sports Inc., 57 U.S.P.Q.2d 1927, 2001 WL 322175 (W.D. Wash. 2001) (preliminary injunction against using photo of plaintiff's sporting equipment in defendant's catalog); Universal Furniture Intern., Inc. v. Collezione Europe USA, Inc., 84 U.S.P.Q.2d 1956, 2007 WL 2712926 (M.D. N.C. 2007) (Violation of Lanham Act by defendant using plaintiff's furniture as a sample in a showroom and in advertising and passing it off as defendant's product.). [Id] [Emphasis added]

McCarthy then makes the obvious point:

Thus, § 43(a) is violated if the plaintiff's product is used to sell the defendant's product . . . . [Id]

The gravamen of the tort, then, is the defendant's use of a **photograph of the plaintiff's product**. But as noted above, that is no different from a textual advertisement offering, for example, a Gucci handbag to sell a defendant's knock-off. In each case, the defendant is using the plaintiff's product (a photo of a Gucci handbag; or a text advertisement offering an authentic Gucci handbag) to sell a bootleg version. In either case, it is likely – in fact, it is certain – to cause confusion as to the source of the defendant's product.

In the present case, of course, the photographs that Uncle Dave posted on its website are photographs of actual train engines, not photographs of any competitor's **products**. (The images were prototypes of the models that they intended to sell, once they were manufactured.)

The illogic of this claim is astounding. Not only have they cut out of the equation the original products (mostly steam engines, long since melted down); they have altered the test by substituting photographs for the objects being copied. Forgetting the fact that they have no possessory interest in the actual steam engines, in order to make this claim stick, they would have to convince the Court that someone purchasing the defendant's model train would expect to receive the full-blown original engine; and that the engine belonged to Morning Sun.

What plaintiff would have this Court do is to alter the test for §43(a) infringement by recognizing a cause of action on behalf of the photographer . . . or the

photographer's publisher. Actually, there is such a cause of action: it is called copyright infringement, which is precisely what plaintiff has claimed in their first cause of action. Plaintiff's circular argument would turn every copyright infringement into a 43(a) tort as well.[7]

This is such an absurd idea, it seems almost unfair to note that the claim, at least as conjured up by the plaintiff (that the mere use of a photograph, without more, constitutes a violation of the Lanham Act), would also run afoul of the preemption provisions of the Copyright Act, 17 USC 301(a):

> . . . all legal or equitable rights that are equivalent to any of the exclusive rights . . . within the general scope of copyright . . . and come within the subject matter of copyright as specified . . . are governed exclusively by this title . . . .

Since plaintiff is complaining about Uncle Dave's publication of photographs, a right squarely within the scope of copyright, plaintiff's claim is preempted.

---

[7]Given the paucity of their 43(a) claim, we feel it unnecessary to spend much time briefing yet another basis for dismissing this claim: the sophistication of Uncle Dave's customers. "Courts consider whether the defendant's product is aimed at 'discriminating' purchasers and whether its buyers have exceptional training or education to determine if they are less likely to be confused. Similarly, where the product cost is high or consumers otherwise would exercise great care in selecting the product, those facts may reduce whatever likelihood of confusion there otherwise would be." Gilson on Trademarks § 5.08. As many of these models sell for $1,000.00 and more [Gurdak decl. ¶10], we are certainly not dealing with impulse purchases. It is inconceivable that a customer would be confused into believing that those models emanated from or were other wise associated with MS.

<u>Plaintiff Lacks Prudential Standing</u>

There is yet another barrier to plaintiff's 43(a) claim: since there is no competition between the parties, plaintiff has no prudential standing to maintain this action. The controlling authority in this circuit is <u>Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.</u>, 165 F.3d 221(3d Cir. 1998). There, the plaintiffs, retail sellers of motor oil, filed a false advertising case against Quaker State, challenging the veracity of their advertising. The Third Circuit affirmed the district court's dismissal of the 43(a) claim, on the grounds that the plaintiffs lacked prudential standing:

> We find it significant that the Lanham Act limits the class of persons entitled to sue to those who can trace their injury to the anti-competitive conduct proscribed by the Act, and find in the text support for our conclusion that Congress did not abrogate principles of prudential standing. [165 F.3d at 228]

Mr. Yanosey at his deposition conceded that there was no competition between the parties:

> Q:   Morning Sun is not in competition with Uncle Dave in any respect, are they?
>
> A:   No.   [Yanosey 7/6/12 dep., 75/19-22; App. p 15][8]

Thus, Morning Sun cannot allege a competitive injury. They sell books; Uncle Dave sells model trains. Even conceding unauthorized copying, the posting of those 10

---

[8] He also admitted that he was unaware of anyone being "confused into believing that any model train offered for sale by Uncle Dave emanated from Morning Sun." [Yanosey 7/6/12 deposition, 75/23 - 76/17; App. pp 15, 16]. And it might be easier to sell the Brooklyn Bridge than to convince anyone that posting those 10 images on an obscure website could possibly have caused Morning Sun any damage at all.

photos on Uncle Dave's website (only one of which even mentions Morning Sun by name) could not possibly damage Morning Sun's book sales.

And it hasn't. At his deposition, Yanosey testified that his sale of books has remained remarkably steady over the past ten years:

> Q:     . . . . What has been the record of sales for your books over the past let's say four or five years, total book sales?
> 
>                      * * *
> 
> A:     Well, approximately we sell about 50 to 60,000 books a year.
> 
> Q:     And how consistent has that been over time?
> 
> A:     Very consistent. Very consistent, I am happy to report.
> 
> Q:     So fifty to sixty thousand for each of the past five or so years. How about the five years before that?
> 
> A:     Approximately the same thing.

[Yanosey 7/6/12 dep., 80/8-10; 81/12-21; App. pp 17, 18] Since damage is an essential element of a 43(a) claim (see the statute, above), plaintiff's 43(a) claim cannot be sustained:

> [Section 43(a) is intended to provide a private remedy] to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.

Serbin v. Ziebart Int'l Corp., 11 F.3d 1163, 1175 (3d Cir. 1993).

## Plaintiff Cannot Sustain its Linking Argument

But even assuming ***arguendo*** that Uncle Dave's website was linked to the Division Point website (it clearly was not), there would be no liability in any event. Else, Google would be liable for every infringing sale on the Internet.

> . . . hyperlinks are essential to the operation of the Internet for a host of legitimate purposes. The host of a website who establishes a link to another site that may be interesting to the host's website visitors does not undertake any general duty to police whether the linked sites contain any material infringing the copyrights of others."

Batesville Services, Inc. v. Funeral Depot, Inc., 2004 WL 2750253, 2 (S.D.Ind. 2004) As plaintiff has alleged (even erroneously) only that Uncle Dave provided a hyperlink to the Division Point website, its linking claim is fatally flawed.

Conclusion

Plaintiff has filed an essentially frivolous lawsuit, claiming infringement of more than 150 copyrighted photographs when they possess not a single copyright registration for any of them. And they compound the damage by adding a Lanham Act claim that is characterized by a total absence of even one of the three crucial elements needed to prove the claim, disregarding the additional fact that they lack prudential standing to even file the action.

Under the circumstances, the Court should put everyone out of further

misery by granting summary judgment dismissing this action in its entirety.

Dated:         West Orange, New Jersey          Respectfully submitted,
               January 14, 2013


                                                s/Jules D. Zalon,
                                                Attorney for defendant
                                                Uncle Dave's Brass Model Trains